Dariush G. Adli, SBN 204959
  adli@adlilaw.com
Marina Manoukian, SBN 180104
  marina.manoukian@adlilaw.com
ADLI LAW GROUP, PC
700 South Flower St., Suite 1220
Los Angeles, California 90017
Telephone: (213) 623-6546
Attorneys for Defendant,
YS PROPERTIES, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY BOUYER, an individual<br><br>*Plaintiff,*<br><br>v.<br><br>YS PROPERTIES, LLC, a Delaware limited liability company; and DOES 1-10, inclusive,<br><br>*Defendants.* | Case No.: 2:20-cv-02195-CJC-PJW<br><br>*Hon. Cormac J. Carney*<br><br>**DEFENDANT YS PROPERTIES, LLC'S MOTION TO DISMISS PURSUANT TO F.R.C.P. §12(b)(1)**<br><br>**Hearing Date:** June 8, 2020<br>**Time:**    1:30 PM<br>**Location:**  Courtroom 7C<br>       350 W. 1st Street,<br>       Los Angeles, CA 90012 |

# Table of Contents

**NOTICE OF MOTION**......................................................................................... 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ........................................ 2

    **I.**     **INTRODUCTION**.................................................................................. 2

    **II.**    **MEET AND CONFER** ........................................................................... 2

    **III.**   **PROCEDURAL HISTORY**.................................................................... 2

    **IV.**   **STATEMENT OF FACTS** ..................................................................... 3

    **V.**    **ARGUMENT** ......................................................................................... 5

        **a.**   **Plaintiff Did Not Suffer an Injury in Fact.** ........................................... 6

        **b.**   **Plaintiff's Alleged Injury is Not Traceable to the Actions of YS Properties**........... 8

        **c.**   **Plaintiff's Alleged Injury is Moot and Therefore Cannot Be Redressed.**............. 11

    **VI.**   **CONCLUSION** ................................................................................... 14

# Table of Authorities

Page(s)

Cases

*Am. Cargo Transp., Inc. v. United States*,
  625 F.3d 1176 (9th Cir. 2010) ................................................................................12

*Baker v. Carr*,
  369 U.S. 186 (1962) ..................................................................................................5

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
  631 F.3d 939 (9th Cir. 2011) ................................................................................6, 9

*City of Erie v. Pap's A.M.*,
  529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) ........................................11

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ....................................................................................................6

*Doran v. 7-Eleven, Inc.*,
  524 F.3d 1034 (9th Cir. 2008) ..................................................................................7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
  528 U.S. 167 (2000) ............................................................................................6, 12

*Harris v. Costco Wholesale Corp.*,
  389 F.Supp.2d 1244 (S.D.Cal.2005) ........................................................................7

*Hubbard v. 7-Eleven, Inc.*,
  433 F. Supp. 2d 1134 (S.D. Cal. 2006) ..............................................................7, 12

*Independent Living Resources v. Oregon Arena Corp.*,
  982 F.Supp. 698 (D.Or.1997) ............................................................................9, 12

*Kohler v. Bed Bath & Beyond of Cal.*,
  2012 WL 3018320 (C.D.Cal.2012) ..................................................................12, 13

*Kohler v. In-N-Out Burgers*,
  2013 WL 5315443 (C.D. Cal. Sept. 12, 2013) .......................................................12

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................ 6

*Moeller v. Taco Bell Corp.*,
    816 F. Supp. 2d 831 (N.D. Cal. 2011) ..................................................................... 7

*Molski v. M.J. Cable, Inc.*,
    481 F.3d 724 (9th Cir. 2007) .................................................................................... 9

*Oliver v. Ralphs Grocery Co.*,
    654 F.3d 903 (9th Cir. 2011) ............................................................................ 11, 12

*Or. Natural Res. Council v. U.S. Bureau of Land Mgmt.*,
    470 F.3d 818 (9th Cir. 2006) .................................................................................. 11

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ................................................................................................ 6

*St. Clair v. City of Chico*,
    880 F.2d 199 (9th Cir. 1989) .................................................................................... 5

*Thornhill Publishing Co. v. General Tel. & Elec. Corp.*,
    594 F.2d 730 (9th Cir. 1979) ................................................................................ 5, 6

*Vogel v. Winchell's Donut Houses Operating Co.*, LP,
    252 F. Supp. 3d 977 (C.D. Cal. 2017) ..................................................................... 7

Statutes

42 U.S.C. § 12182(a) ..................................................................................................... 8

42 U.S.C. § 12188(a) ................................................................................................... 11

42 U.S.C. §12182(b)(2)(A)(iv) ................................................................................. 8, 9

Rules

Fed. R. Civ. Proc. 12(b) ................................................................................................. 5

Fed. R. Civ. Proc. 12(b)(1) ........................................................................................ 5, 6

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2915.201

iii

DEFENDANT YS PROPERTIES, LLC'S MOTION TO DISMISS PURSUANT TO F.R.C.P. §12(b)(1)

Rule 12(b)(6)..................................................................................................5

Regulations

28 C.F.R. § 35.151(d) ....................................................................................9

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on June 8, 2020 at 1:30 PM in courtroom 7C., Defendant YS Properties, LLC ("YS Properties") will and hereby does move the Court for to dismiss Plaintiff Anthony Bouyer's ("Plaintiff") complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), on the ground that Plaintiff has no standing under Article III.

Plaintiff's complaint is subject to dismissal for three reasons: (1) Plaintiff lacks standing to sue; (2) YS Properties, LLC was compliant with ADA regulations at the time of Plaintiff's alleged visit; and (3) Plaintiff's only relief is moot due to YS Properties, LLC's compliance with ADA regulations.

This motion is based on this Notice of Motion and Motion, the memorandum of points and authorities filed herewith, the declarations of Junggon Sohn and Marina Manoukian, and all other such matters as may be presented to the Court at the time of the hearing.

ADLI LAW GROUP, P.C.

Dated: May 7, 2020            */s/ Marina Manoukian*
                              Dariush G. Adli, Esq.
                              Marina Manoukian, Esq.
                              Attorneys for Defendant,
                              YS PROPERTIES, LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Anthony Bouyer ("Plaintiff") has brought this action against Defendant YS Properties, LLC ("YS"), complaining of violations of the Americans with Disability Act Accessibility Guidelines ("ADAAG') claiming that on February 24, 2020, at the small shopping center owned by YS, located at 15826 Ventura Blvd., Encino, CA 91436 ("Property"), there was no "designated parking space available for persons with disabilities that complied with the 2010 ADAAG," that there was a "built-up curb ramp that projects from the sidewalk and into the access aisle," and that the "curb ramp is in excess of the maximum grade allowed by ADAAG."

However, Plaintiff has no standing to bring such a claim as (1) YS had ADAAG compliant accessible parking at the time of Plaintiff's alleged visit; and (2) Plaintiff's claim is moot since the only relief he can be awarded, an injunction, is mooted by YS's compliance.

### II. MEET AND CONFER

Defendant initiated its meet and confer attempts by email on April 28, 2020 in which Defendant presented its intention to file a motion to dismiss and the basis for same. [Declaration of Marina Manoukian ¶2]

Between April 28, 2020 and May 5, 2020, Defendant, through counsel and via email had several exchanges regarding the basis for its motion to dismiss. Unfortunately, the parties were not able to resolve their differences and this motion is now necessary. (Declaration of Marina Manoukian ¶3]

### III. PROCEDURAL HISTORY

On March 6, 2020, Plaintiff filed this action against Defendant YS, alleging architectural violations of the Americans with Disabilities Act ("ADA"), and violations of California's Unruh Civil Rights Act.

On March 10, 2020, this Court, *sua sponte*, issued an Order to Show Cause to

Plaintiff, ordering him to state why the Court should exercise supplemental jurisdiction over his Unruh Act claim, and any other state law claims asserted in his Complaint. [Doc. 8].

On March 26, 2020, this Court declined to exercise jurisdiction over Plaintiff's state law claims. [Doc. 10]. The Court found that Plaintiff was a high-frequency litigant based on the fact that, Plaintiff had filed ninety-four (94) ADA cases in the Central District of California since January 1, 2010, making the frequency of filings more than one case per day. [Doc. 10, 6:6-7] The Court cited the extreme increase in ADA filings in the Central District of California by high-frequency litigants following the State of California's actions to limit the filings by high-frequency litigants, and essentially found that plaintiffs duck the burdens of state law filing requirements, but still seek to reap its benefits by filing in federal courts. [Doc. 10] As a result, this court found compelling reasons to decline supplemental jurisdiction. [Doc. 10]. The Court accordingly dismissed Plaintiff's state law claims. [Doc 10].

As a result, Plaintiff's only remaining claims are under the ADA. Accordingly, Plaintiff is only entitled to injunctive relief and if successful on said claim, then attorney's fees.

### IV. STATEMENT OF FACTS

In his complaint, Plaintiff states he is a paraplegic who uses a wheelchair for mobility. [Doc. 1, ¶1]. Plaintiff claims that on February 24, 2020, he visited the Property for the "dual purpose of purchasing food and drink items and to confirm that this public place of accommodation is accessible to persons with disabilities." [Doc. 1, ¶8].

Plaintiff alleges that on the date of his visit, the Property did not have designated parking spaces available for persons with disabilities that complied with the 2010 ADAAG, that there was a built-up ramp that projects from the sidewalk and into the access aisle, and that the curb ramp is in excess of the maximum grade

allowed by the ADAAG. [Doc. 1, ¶¶ 11 and 12]

Plaintiff's complaint then makes several boilerplate allegations, stating that "Defendant had no policy or plan in place to make sure that there was compliant parking available," that "the presence of barriers denies Plaintiff his right to enjoy accessible conditions in public place of accommodations," that "Plaintiff is deterred from patronizing the Business," and that the violations were "obvious and blatant." [Doc. ¶¶ 15-19] Plaintiff also affirmatively states that he "personally encountered these barriers." [Doc. 1, ¶16].

The Property at issue is a small shopping center with less than 25 parking spaces. In October/November 2019, Defendant hired a contractor to repave the parking lot. [Declaration of Junggon Sohn ("Sohn Dec.") ¶¶ 2 and 3] Defendant paid particular attention to ADA laws and made sure that there was an accessible parking space compliant with ADAAG. [Sohn Dec. ¶3]

The Property has a compliant lift on the premises where there are steps. [Sohn Dec. ¶4] There are the required signs at the entrance of the of the parking lot and at the disabled parking space, which is properly marked and striped. [Sohn Dec. ¶4]

Plaintiff's allegations regarding the lack of ADAAG compliant accessible parking on the Property at the time of his visit are simply untrue. At the time of Plaintiff's alleged visit in February 2020, there was a designated handicapped parking that had the proper markings, measurements, slope and signage. [Sohn Dec. ¶¶ 7 and 8 and **Exhibit 1**] Defendant made sure of this when the plans were prepared for the repaving and marking of the parking lot in late 2019. [Sohn Dec. ¶7]

Defendant used plans when the contractor was repaving and striping the parking lot. The plans show that the contractor specified that the access aisle could not have a slope that is stepper than 1:48 or 2.08%. [Sohn Dec. ¶9 and **Exhibit 2**] Pursuant to the 2010 ADAAG Section 502.4, both the parking space and the access

4

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2915.201

aisle may have a slope not to exceed 1:48 or 2.08%.

While the Plaintiff calls this a built-up ramp, it is simply an access aisle that has a minor slope that does not exceed the maximum allowed slope. [Sohn Dec. ¶10]

To prove that the slope constructed was per the plans, Defendant's contractor placed a leveler on the steepest part of the slope and confirmed that it did not exceed the maximum slope. [Sohn Dec. ¶11 and **Exhibit 3**]

Based on the above, it is obvious that Plaintiff did not measure the slope or attempted to use the parking space. As the current condition of the Property is in compliance with the ADAAG and because the current condition is a permanent condition, there is no reason to believe that Defendant would not remain in compliance, in order to justify injunctive relief.

## V. ARGUMENT

Federal Rule of Civil Procedure ("FRCP") 12 governs how a defendant must present its defenses and provides that party may assert various defenses by motion before pleading if a responsive pleading is allowed. Fed. R. Civ. Proc. 12(b). One such defense allowed by FRCP 12(b) is a motion for dismissal due to lack of subject matter jurisdiction. Fed. R. Civ. Proc. 12(b)(1).

Under FRCP 12(b)(1), a complaint can be dismissed for lack of subject matter jurisdiction if there is no "case or controversy" within the meaning of Article III of the Constitution. See *Baker v. Carr*, 369 U.S. 186, 198 (1962).

"Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989), citing *Thornhill Publishing Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir.1979). "The district court obviously does not abuse its discretion by looking to this extra-pleading material in deciding the issue, even if it becomes necessary to resolve

1  factual disputes." *Ibid*.

2  Here, there are various flaws in Plaintiff's one remaining cause of action that
3  merit dismissal pursuant to FRCP 12(b)(1): (1) YS can show it was ADA compliant
4  at the time of Plaintiff's alleged visit; and (2) Plaintiff's only available relief –
5  injunction –is moot by YS's compliance with ADA standards.

6  "To satisfy Article III's standing requirements, a plaintiff must show that: (1)
7  she has suffered an "injury in fact" that is (a) concrete and particularized, and (b)
8  actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable
9  to the challenged action of the defendant; and (3) it is likely, as opposed to merely
10 speculative, that the injury will be redressed by a favorable decision. *Friends of the*
11 *Earth, Inc. v. Laidlaw Envtl. Servs., Inc*., 528 U.S. 167, 180-181 (2000).

12 "In addition, to establish standing to pursue injunctive relief, which is the
13 only relief available to private plaintiffs under the ADA, [a plaintiff] must
14 demonstrate a 'real and immediate threat of repeated injury' in the future."
15 *Chapman v. Pier 1 Imports (U.S.) Inc*., 631 F.3d 939, 946 (9th Cir. 2011), (quoting
16 *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). "Although encounters with the
17 noncompliant barriers related to one's disability are sufficient to demonstrate an
18 injury-in-fact for standing purposes, a plaintiff seeking injunctive relief must
19 additionally demonstrate 'a sufficient likelihood that he will again be wronged in a
20 similar way'" in order to show a real and immediate threat of repeated injury. *Id*.,
21 quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

22 **a. Plaintiff Did Not Suffer an Injury in Fact.**

23 The first prong of Article III standing is the "injury in fact" analysis, which
24 requires both that the injury be (1) concrete and particularized and (2) actual or
25 imminent. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "The Ninth
26 Circuit has explained that there are two ways an ADA plaintiff can show a
27 cognizable injury-in-fact: (1) by showing injury-in-fact plus an intent to return to
28 the facility at issue; or (2) showing that he was deterred from visiting the facility

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

because he encountered barriers relating to his disability there." *Vogel v. Winchell's Donut Houses Operating Co.*, LP, 252 F. Supp. 3d 977, 983 (C.D. Cal. 2017).

"When a plaintiff is seeking injunctive relief, the requirement that the injury be 'actual and imminent' can be satisfied only where the plaintiff demonstrates 'a sufficient likelihood that he will again be wronged in a similar way;' that is, he 'must establish a real and immediate threat of repeated injury.'" *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 850 (N.D. Cal. 2011). "Allegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008).

However, "an ADA plaintiff only has standing to sue for barriers the plaintiff had knowledge of or actually encountered." *Hubbard v. 7-Eleven, Inc.*, 433 F. Supp. 2d 1134, 1142 (S.D. Cal. 2006), citing *Harris v. Costco Wholesale Corp.*, 389 F.Supp.2d 1244 (S.D.Cal.2005).

In this case, Plaintiff fails the first prong because he has not suffered an injury in fact. Because the parking lot of the Property was repaved and striped in October/November 2019 and was ADAAG compliant at the time of Plaintiff's visit on February 24, 2020, Plaintiff did not suffer an injury in fact.

Further, Plaintiff makes a boilerplate statement that he is deterred from returning, but would return if the barriers were removed, even though there were no barriers at the time of his alleged visit. He provides absolutely no facts to support this conclusory statement. Plaintiff does not, for instance, state that the Property is near his home, work, or otherwise indicate why he would "return." His allegations are intentionally vague. For example, he stated that his intended purpose was purchase "food and drink items" without specifying which business he was intending to visit.

Further, Plaintiff's supposed intent to return is suspicious considering the

sheer volume of ADA cases he has filed. As noted by this Court, between January 1, 2020 and the time he had filed this current action, Plaintiff filed ninety-four (94) other ADA cases against various businesses. In fact, on the same day as the filing of this action, he filed seventeen (17) others. Since he filed this action on March 6, 2020, Plaintiff has filed sixty-four (64) other ADA claims. [Declaration of Marina Manoukian ¶4], which again amounts to more than one per day. From a review of a small sampling of his cases, it appears that Plaintiff very often makes similar generic allegations regarding his visit and his intent to return. [Declaration of Marina Manoukian ¶4].

Considering these facts as a whole, it is evident that Plaintiff never attempted to patronize any business at the Property, nor does he have a legitimate intent to "return" to the Property. Furthermore, the Property had accessible parking at the time of Plaintiff's alleged visit. Plaintiff has therefore suffered no injury in fact and cannot make it past the first prong in the Article III standing analysis.

### b. Plaintiff's Alleged Injury is Not Traceable to the Actions of YS Properties.

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

Discrimination includes failing "to remove architectural barriers ... in existing facilities ... where such removal is readily achievable." §12182(b)(2)(A)(iv).

To prevail on an ADA claim, the plaintiff must establish: (1) he or she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his or her disability.

*Molski v. M.J. Cable, Inc*., 481 F.3d 724, 730 (9th Cir.2007). To succeed on an ADA claim of discrimination on account of an architectural barrier, the plaintiff must also prove that (l) the existing facility at the defendants' place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable. *See* 42 U.S.C. § 12182(b)(2)(A)(iv).

The ADAAG provides "the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman v. Pier 1 Imports (U.S.) Inc*., 631 F.3d 939, 945 (9th Cir.2011). Therefore, "if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA." *Id*. at 947.

However, full compliance with the ADA Standards "act[s] as a safe harbor" for defendants. *Independent Living Resources v. Oregon Arena Corp.*, 982 F.Supp. 698, 727 (D.Or.1997). Additionally, "[t]he 1991 Standards and the 2010 Standards apply to fixed or built-in elements of buildings, structures, site improvements, and pedestrian routes or vehicular ways located on a site." 28 C.F.R. § 35.151(d), (emphasis added).f4n.

While Plaintiff's complaint alleges violations of Section 406 of the 2010 ADAAG, Plaintiff overlooks the more specific sections applicable to parking spaces and access aisles, wherein a minor slope is specifically allowed. The relevant sections of 2010 Standards of ADAAG provide as follows:

> "**502.1 General.** Car and van parking spaces shall comply with 502. Where parking spaces are marked with lines, width measurements of parking spaces and access aisles shall be made from the centerline of the markings.
>
> **EXCEPTION:** Where parking spaces or access aisles are not adjacent to another parking space or access aisle, measurements shall be permitted to include the full width of the line defining the parking space or access aisle.

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2915.201

**502.2 Vehicle Spaces.** Car parking spaces shall be 96 inches (2440 mm) wide minimum and van parking spaces shall be 132 inches (3350 mm) wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3.

> **EXCEPTION:** Van parking spaces shall be permitted to be 96 inches (2440 mm) wide minimum where the access aisle is 96 inches (2440 mm) wide minimum.

**502.3 Access Aisle.** Access aisles serving parking spaces shall comply with 502.3. Access aisles shall adjoin an accessible route. Two parking spaces shall be permitted to share a common access aisle.

> **Advisory 502.3 Access Aisle.** Accessible routes must connect parking spaces to accessible entrances. In parking facilities where the accessible route must cross vehicular traffic lanes, marked crossings enhance pedestrian safety, particularly for people using wheelchairs and other mobility aids. Where possible, it is preferable that the accessible route not pass behind parked vehicles.

**502.4 Floor or Ground Surfaces.** Parking spaces and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted.

> **EXCEPTION: Slopes not steeper than 1:48 shall be permitted.**
> **Advisory 502.4 Floor or Ground Surfaces.** Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles. The exception allows sufficient slope for drainage. **Built-up curb ramps are not permitted to project into access aisles and parking spaces because they would create slopes greater than 1:48.**" 2010 ADAAG

When reading all of the above in conjunction with each other, two things become very clear. First, the access aisle cannot have a slope greater than 1:48.

Second, a built-up curb ramp is a ramp with a slope greater than 1:48. Otherwise it is not considered a "built-up ramp." Even Plaintiff's complaint admits that there is a maximum slope allowed on the curb ramp, admitting that if the slope is not greater than the maximum allowed, then it is ADA compliant.

In the instant case, Plaintiff's alleged injury cannot be attributable to YS for one simple reason: YS has, and at the time of Plaintiff's alleged visit, had an ADA compliant accessible parking space and aisle. Therefore (even if Plaintiff did in fact ever attempt to patronize the Property) Plaintiff was not denied accommodations because of his disability.

YS has a clearly marked and striped accessible parking space and aisle (*see* Exhibit 1 photos) which meets the ADA measurements and does not exceed the maximum allowed slope. (see Exhibits 2 and 3) This ADA compliant accessible parking has been in place at least since October/November 2019.

As the Property was ADA compliant, Plaintiff fails the second prong of the Article III standing analysis as well.

### c. Plaintiff's Alleged Injury is Moot and Therefore Cannot Be Redressed.

The enforcement provisions of Title III provide only for injunctive relief; damages are not available to individuals. *See* 42 U.S.C. § 12188(a). Injunctive relief is the only type of relief available to ADA plaintiffs. *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011). Further, if a challenged condition has been remedied by the defendant, a plaintiff has received everything to which he would have been entitled under the ADA, and the claim is usually moot. *Ibid*.

An issue is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). "The question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be any effective relief." *Or.*

11

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2915.201

*Natural Res. Council v. U.S. Bureau of Land Mgmt.*, 470 F.3d 818, 820 (9th Cir.2006).

Thus, "a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting [an] ADA claim." *Oliver v. Ralphs Grocery Co., supra*, 654 F.3d at 905; *see also Hubbard v. 7–Eleven, Inc.*, 433 F.Supp.2d 1134, 1145 (S.D. Cal. 2006) [defendant repaired ramp slope from public sidewalk to store entrance, which was too steep, thus mooting the ADA claim]. This "is particularly true of structural modifications, which are unlikely to be altered in the future." *Indep. Living Res. v. Oregon Arena Corp.*, 982 F.Supp. 698, 774 (D.Or.1997) supplemented, 1 F.Supp.2d 1159 (D.Or.1998).

Although courts may be wary to declare a case moot based on a defendant's voluntary cessation of challenged activity, where there is "no reasonable ... expectation that the alleged violation will recur," the concerns surrounding voluntary cessation are less relevant. *Friends of the Earth, Inc. v. Laidlaw v. Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000); *see also Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1179 (9th Cir. 2010).

Although, prior to dismissing a case as moot, courts often require a defendant who voluntarily ceased challenged conduct to show that the challenged conduct cannot be reasonably expected to recur, when it comes to ADA cases, courts in this district have held that this threshold is met where there is no evidence or reason to suggest a defendant will revert to non-compliance – this is especially true where there is no financial incentive to do so, or the cost of reverting to the challenged activity would be greater than maintaining compliance. *See Kohler v. Bed Bath & Beyond of Cal.*, 2012 WL 3018320, at *4 (C.D.Cal.2012) [finding the idea that the defendant would revert to noncompliance "illogical" because "doing so would actually cost Defendant more than maintaining compliance"]; *Kohler v. In-N-Out Burgers*, No. CV 12-5054-GHK JEMX, 2013 WL 5315443, at *7 (C.D. Cal. Sept. 12, 2013) ["Defendant has shown that it makes no sense for it to spend more money

to revert to non-compliance, especially where there is no evidence that Defendant would derive any benefit from such reversion"].

Since this Court declined to exercise jurisdiction over Plaintiff's state law claims, the only remaining claim is the ADA claim. Therefore, the maximum relief Plaintiff could obtain through this case is an injunction, requiring YS to provide ADA complaint parking.

YS has shown that at the time of Plaintiff's alleged visit, it had and currently still provides an ADA accessible parking, and that it has done so continuously since at least end of 2019. YS has absolutely no incentive, financial or otherwise, to remove its ADA compliant parking space. There is no evidence that Defendant would derive any kind of benefit from removing the ADA parking space.  In fact, it would cost more to remove the accessible parking. The situation at hand is akin to that in *Kohler v. Bed Bath & Beyond of Cal.*, where removing the accessible parking would have a greater cost than maintaining it. There would be no logical reason for YS to cease complying with the ADA standards and therefore no need for an injunction.

Since the alleged barrier does not exist, an injunction requiring YS to remove the barrier is unnecessary. Because Plaintiff had no claim to begin with because Defendant was compliant at the time of the alleged visit, Plaintiff has already received everything to which he would have been entitled under the ADA, and therefore his claim is moot. Since YS is already compliant with ADA regulations, Plaintiff cannot be afforded effective relief by pursuing this litigation. Plaintiff thus fails the third prong of the Article III analysis, as the injury cannot be (further) redressed by a favorable decision by this Court.

/ / /

/ / /

/ / /

/ / /

## VI. **CONCLUSION**

For the foregoing reasons, Defendant YS respectfully asks this Court to dismiss Plaintiff's Complaint with prejudice.

ADLI LAW GROUP, P.C.

Dated: May 7, 2020

*/s/ Marina Manoukian*
Dariush G. Adli, Esq.
Marina Manoukian, Esq.
Attorneys for Defendant,
YS PROPERTIES, LLC